Michael S. Elkin, Esq.
Scott R. Samay, Esq.
Margaret Ciavarella, Esq.
WINSTON & STRAWN LLP
200 Park Avenue
New York, New York 10166
Telephone: (212) 294-6700
Facsimile: (212) 294-4700

*Attorneys for Petitioner*

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
:
VOXX INTERNATIONAL CORPORATION :
f/k/a AUDIOVOX CORPORATION         :
                                                              :       Case No. 1:16-cv-4162
                    Petitioner,                          :
                                                              :
         -against-                                     :       **PETITION TO COMPEL
                                                              :            ARBITRATION**
TMI PRODUCTS, INC.                            :
                                                              :
                                                              :
                                                              :
                    Respondent.                      :
                                                              :
-------------------------------------------------------X

Petitioner Voxx International Corporation f/k/a Audiovox Corporation ("Voxx"), for its Petition to Compel Arbitration against Respondent TMI Products, Inc. ("TMI"), alleges as follows:

1. This is a Petition to Compel Arbitration pursuant to Section 4 of the Federal Arbitration Act, 9 U.S.C. § 4.

2. Voxx and TMI settled an earlier patent litigation between them via a Settlement Agreement containing an arbitration clause, which provided for arbitration of all disputes "arising out of or relating to" the Agreement before the American Arbitration Association

-1-

("AAA").  When a dispute arose about TMI's obligations under the Settlement Agreement, Voxx accordingly commenced a AAA arbitration in August 2015.  Voxx brought claims for breach of contract and patent infringement.

3. The parties selected a panel of arbitrators, exchanged several rounds of pleadings and discovery requests, and produced documents all the way up through April 2016, at which time TMI flatly refused to pay its share of the AAA's administrative fees.  While TMI claimed "financial hardship," it provided no information whatsoever to substantiate that claim.  As a result of the non-payment, the AAA suspended the proceedings, and, if payment is not received by June 8, 2016, the AAA has indicated that it will terminate the arbitration.

4. TMI's unjustified refusal to pay the AAA amounts to a refusal to honor its agreement to arbitrate.  TMI entered willingly into the AAA arbitration clause, knowing that the AAA requires payment of administrative costs which are to be shared equally by the parties, yet it chose not to comply with that fundamental requirement.  Instead of respecting the AAA rules and arbitrating in good faith, TMI opted to use its own non-payment as a way to avoid the claims brought against it.  TMI's conduct has deprived Voxx of its right to arbitrate.  Voxx is therefore entitled to an order from this Court compelling TMI to pay the AAA fee and continue with arbitration.  In addition to being deprived of the arbitration proceedings it negotiated for, absent an order compelling those proceedings, Voxx will have incurred significant damages in the form of the legal fees and costs that it paid with respect to an arbitration that has been rendered moot by virtue of TMI's wrongful conduct.

**PARTIES, JURISDICTION AND VENUE**

5. Voxx is a corporation incorporated in the state of Delaware, with a principal place of business in Hauppage, New York.  Voxx is a leading global manufacturer and supplier of

consumer electronic products in the automotive, premium audio and consumer accessory industries.

6. TMI is a corporation incorporated in the state of California, with a principal place of business in Corona, California. TMI manufactures and sells interior automotive components such as seats, consoles, and door panels.

7. This Court has subject matter jurisdiction over this matter based on diversity of citizenship of the parties, 28 U.S.C. § 1332(a)(1), because the dispute is between citizens of different states and the amount in controversy exceeds $75,000.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(2) because the parties' arbitration agreement requires arbitration "in the City and State of New York." The clause reads in full:

> Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, which does not involve claims by or against third parties, shall be settled by arbitration in the City and State of New York in accordance with the rules of the American Arbitration Association. Judgment upon the award rendered by the Arbitrator(s) may be entered in any court having jurisdiction thereof.[1]

## THE ARBITRATION PROCEEDINGS

9. The Settlement Agreement was intended to lay out the structure under which the parties would operate in their shared marketplace in the future. When TMI failed to comply with its obligations under the Settlement Agreement, Voxx filed its initial Demand for Arbitration with the AAA on August 3, 2015. TMI filed its Answer on September 30, 2015. The next step was to select the arbitrators. Voxx, pursuant to the AAA rules, exercised its right to demand a three-arbitrator panel. TMI briefly objected, stating that it preferred a sole arbitrator. The AAA denied TMI's objection and found that a three-person panel was appropriate. TMI then

---

[1] Voxx has not attached the Settlement Agreement because it contains a confidentiality provision. Should the Court wish to see it, however, Voxx will provide it under seal.

participated in arbitrator selection and continued the proceedings without submitting any further written objections.

10. Throughout the course of the arbitration, TMI has consistently acted to increase the cost of the proceedings and to delay those proceedings. It did not behave like a company experiencing a financial crisis. It did not seek to mitigate either its own costs or the costs to Voxx. Two rounds of arbitrator rankings were necessitated by TMI's duplicitous behavior in the panel selection process. After the AAA added new restrictions to prevent further delays in the selection process, a panel of arbitrators was finally constituted in November 2015. Thereafter, Voxx was forced to amend its demand in response to further actions taken by TMI, and TMI submitted an amended answer. TMI then requested leave to file a motion challenging the arbitrability of certain of Voxx's claims. In the conference call with the Panel in which TMI announced its intention to make this motion, the Panel warned TMI that if it succeeded in blocking arbitration of certain of Voxx's claims, it would simply find itself with even more costly parallel litigation proceedings. TMI indicated that it understood and was willing to accept that outcome, and went forward with the motion (which, of course, resulted in motion costs for both parties.) After full briefing of TMI's motion—which was brought on an entirely different basis than that originally described to the Panel—the Panel denied TMI's motion, finding that all of Voxx's claims were arbitrable.

11. The parties then negotiated an agreed-upon schedule for discovery and the remainder of the pre-hearing procedures, which were to culminate in a week-long hearing in late June 2016. Voxx proposed a very streamlined schedule without onerous discovery. When the parties disputed any aspect of the schedule, TMI always pushed for more complex and more costly procedures. For example, Voxx suggested a single simultaneous submission of expert

reports, but TMI wanted a multi-step process with additional reports, and convinced the Panel to implement the broader process.  TMI also demanded written disclosures mapping each limitation of asserted patent claims to TMI's products and invalidity charts that mapped the same patent limitations to "prior art" documents.

12.     The early months of 2016 were quite active.  Voxx and TMI exchanged document requests.  TMI served 68 such requests (more than twice the number served by Voxx). The parties made their objections, met and conferred, and made document productions.

13.     Voxx then moved for leave to amend its demand again.  This was not due to any lack of diligence by Voxx in drafting its original demand.  Rather, through the course of the arbitration, Voxx learned that TMI had spun off one of its divisions to form a "separate" shell company (capitalized with just $1000, owned by TMI's principals and its attorney, and using TMI's office space) through which to engage in the exact conduct the Settlement Agreement was designed to prohibit.  Voxx therefore sought to add the shell company as a party to the arbitration as an alter ego of TMI.

14.     TMI again brought on motion practice by objecting to the addition of the shell entity.  The Panel rejected TMI's objections and added the party.  TMI submitted an answer to Voxx's second amended demand.  TMI and its alter-ego entity then requested to extend the case schedule and the parties began to meet and confer concerning that request

### TMI'S REFUSAL TO PAY THE AAA

15.     In the meantime, on March 11, 2016, TMI advised the AAA by telephone that it did not intend to pay the AAA invoice for TMI's share of the administrative and arbitrators' fees incurred to date (approximately $97,000).  Voxx paid the AAA a similar amount fulfilling its obligations with respect to arbitration costs.  On March 16, 2016, TMI stated by email that it

would "not be able to pay the AAA invoice because it will cause severe financial hardship on the company," yet quite inconsistently noted its "intent to litigate the case through Arbitration."

16. Voxx responded by requesting an affidavit and financial documentation substantiating TMI's claim of hardship. Voxx's request was reasonable in light of TMI's simultaneous and inconsistent declarations of "hardship" with respect to paying the AAA and its intent to continue expending resources litigating the matter through hearing. The AAA thereafter convened a conference call between counsel for Voxx and counsel for TMI to discuss the situation.

17. During this conference call, which took place on March 25, 2016, counsel for TMI indicated that he did not represent TMI in the matter of its non-payment of the AAA's invoices, but that he did understand that TMI was unable to pay *any* of the fees due. The AAA administrator pointed out that TMI had not responded to Voxx's request for substantiation of the claim of hardship, and set a deadline of April 4, 2016 for TMI to do so.

18. On April 4, 2016, instead of producing the required documentation, TMI informed the AAA that *if* it "elect[ed]" to comply with the AAA's order, it would require assurance from the AAA that the materials would not be shared with Voxx or Voxx's counsel. Voxx objected to this, pointing out that the protective order in place rendered TMI's purported confidentiality concerns baseless. Voxx also pointed out that TMI's claim of hardship was suspect in light of TMI's substantial sales of product in the marketplace and its stated willingness to incur legal, expert and discovery costs in arbitration. Nonetheless, TMI refused to produce *any* supporting documentation or an affidavit evidencing its supposed financial hardship—even to the AAA.

19. Faced with TMI's non-payment, on April 7, 2016, the Panel suspended administration of the proceedings for 60 days, and indicated that if payment was not made in that time, the arbitration would be terminated. To date, TMI has still not paid, and Voxx is therefore facing termination of the arbitration proceedings to which it is entitled and in which it has already invested substantial sums. TMI seeks to game the system by refusing to pay its share of arbitration costs so that it can fortuitously avoid the arbitration proceedings brought against it. If such conduct is deemed appropriate in the commercial context, companies will have a new weapon to defeat claims against them—simply refuse to pay the arbitration bills.

20. Voxx has paid its arbitration bills and it has incurred substantial legal and discovery costs with respect to the arbitration. Compelling TMI to respect its arbitration commitments and pay the AAA is an expense that Voxx should not have to bear. Thus, Voxx also respectfully asks this Court to award Voxx the attorneys' fees and costs Voxx incurred to bring this Petition.

## COUNT ONE: PETITION TO COMPEL ARBITRATION

21. Voxx and TMI entered into a valid and binding agreement to arbitrate. At no time has TMI challenged the validity of that agreement.

22. The arbitration Panel has ruled that all of Voxx's claims fall within the scope of that agreement.

23. In their agreement, the parties specifically agreed to conduct an arbitration under the "rules of the American Arbitration Association." The AAA rules, in turn, provide that the AAA "shall prescribe administrative fees," that the "expenses of the arbitration…shall be borne equally by the parties," and that "[t]he AAA may require the parties to deposit in advance of any

hearings such sums of money as it deems necessary to cover the expense of the arbitration, including the arbitrator's fee." *See* AAA Rules R-53–R-56 (attached hereto as Exhibit A).

24. TMI, by refusing to pay the AAA invoice, has refused to arbitrate under the terms of the agreement. TMI's non-payment has resulted in a suspension of the arbitration and has deprived Voxx of its right to resolve its dispute via arbitration.

25. Voxx is therefore entitled to an order under 9 U.S.C. § 4 compelling TMI to pay the AAA invoice and resume the arbitration.

**PRAYER FOR RELIEF**

Voxx respectfully requests that this Court enter an order (1) declaring that TMI has breached its agreement to arbitrate; (2) compelling TMI to pay the AAA invoice and resume arbitration; and (3) awarding Voxx costs and attorneys' fees incurred by Voxx with respect to the instant Petition.

Dated: New York, New York
       June 3, 2016

WINSTON & STRAWN LLP

By: */s/ Michael S. Elkin*
    Michael S. Elkin, Esq.
    Scott R. Samay, Esq.
    Margaret Ciavarella, Esq.

    200 Park Avenue
    New York, New York 10166
    MElkin@winston.com
    SSamay@winston.com
    MCiavarella@winston.com
    Telephone: (212) 294-6700
    Facsimile: (212) 294-4700

*Attorneys for Petitioner Voxx International Corporation*